**SIGNED THIS: August 22, 2011**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CENTRAL ILLINOIS ENERGY | ) | No. 09-81409 |
| COOPERATIVE, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| RICHARD E. BARBER, not individually, | ) | |
| but as trustee for the estate of Central | ) | |
| Illinois Energy Cooperative, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 10-8017 |
| | ) | |
| CAMILLE'S OF CANTON, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**O P I N I O N**

This matter is before the Court on cross motions for summary judgment filed in this proceeding brought by Richard E. Barber, as Trustee of the estate of the Debtor, Central

Illinois Energy Cooperative (DEBTOR), against Camille's of Canton, Inc. (DEFENDANT), to recover a payment of $4,189.99, as a fraudulent transfer.

*Background*

This adversary proceeding is one of several brought by Richard E. Barber (TRUSTEE). The DEBTOR owned a controlling interest in Central Illinois Holding Company, LLC, the holding company for Central Illinois Energy, LLC (CIE), the entity formed in 2005 for the purpose of constructing, owning and operating an ethanol production facility and waste-coal fired power generating facility.[1] The DEBTOR, an agricultural cooperative formed under Illinois law, comprised of farmers in the Central Illinois area, was formed to own and operate a grain handling facility and to sell its members' corn to CIE for processing into ethanol and other byproducts. After the construction project encountered financial difficulties, the DEBTOR transferred substantially all of its assets, including the grain handling facility and numerous corn delivery contracts, to Green Lion Bio-Fuels, LLC, on or about June 12, 2007. Delays and cost overruns continued to plague the project and the general contractor ceased working on the ethanol plant in November, 2007. CIE filed a Chapter 11 petition on December 13, 2007, and an order for conversion to Chapter 7 was entered on August 4, 2008. Pursuant to sections 363(b) and (f) of the Bankruptcy Code, substantially all of CIE'S assets were sold to New CIE Energy Opco, LLC, by order entered April 24, 2008.

On September 5, 2007, Toni Dillefeld, who may have been employed by both the DEBTOR and CIE, placed an order for the purchase of 195 custom-made shirts with the

---

[1] According to the affidavit of the TRUSTEE'S insolvency expert, the DEBTOR held a 71% common membership interest and a 33% preferred membership interest in Central Illinois Holding Company, LLC.

2

logo "Central Illinois Energy" with the words "Pure energy. Homegrown" printed below. The shirts were paid for by the DEBTOR on October 17, 2007, with a check drawn on its account, signed by Toni Dillefeld. That check identifies the account holder as "Central Illinois Energy" with the word "Co-Operative" appearing immediately below. Thereafter, each of the employees of CIE received five shirts, and the shirts were worn by those employees during work hours.

The TRUSTEE retained Neil M. Gerber, a CPA, to perform a solvency analysis. According to Gerber's report, as a part of its general ledger, the DEBTOR maintained an account which recorded payments that it had made in satisfaction of liabilities incurred by CIE and of reimbursements received by CIE in payment of those advances. According to the schedule of transfers attached to the report, the payment of $4,189.99 to DEFENDANT was recorded by the DEBTOR as an advance on behalf of CIE that was not repaid. (CIE filed its voluntary Chapter 11 petition within two months of the advance.)

A Chapter 11 involuntary petition was filed against the DEBTOR on May 1, 2009. The DEBTOR did not file an answer and an order for relief was entered on June 18, 2009. The case was converted to Chapter 7 on July 16, 2009, on the motion of the U.S. Trustee. With approval of the Court, and no one appearing for the DEBTOR, the schedules were prepared by HWS Energy Partners, LLC, the petitioning creditor. According to the Statement of Affairs, Antoinette Dillefeld was the DEBTOR'S bookkeeper. The schedules filed on behalf of the DEBTOR disclose that it held 17.75 million units of Central Illinois Holding Company, LLC, constituting a 71% ownership. Central Illinois Holding Company, LLC, included in the list of the DEBTOR'S business interests in the DEBTOR'S Statement of Financial Affairs, is identified as the holding company for CIE.

3

The TRUSTEE brought this adversary proceeding in three counts to recover the payment to the DEFENDANT as a fraudulent conveyance under section 548 of the Bankruptcy Code and under the Uniform Fraudulent Transfer Act. Count I of the complaint, on which the TRUSTEE'S motion for summary judgment is brought, seeks avoidance of the transfer pursuant to section 548(a).

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail on a motion for summary judgment, the moving party must establish there is no genuine issue of material fact as to any essential element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a moving party has met its initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-movant to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial. Inferences to be drawn from underlying facts must be viewed in the light most favorable to parties opposing the motion. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003). A material factual dispute is sufficient to prevent summary judgment only when the disputed fact is determinative of the outcome under applicable law. It is not the role of the trial court to weigh the evidence or to determine its credibility, and the moving party cannot prevail if any essential element of its claim for relief requires trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

4

The filing of cross motions for summary judgment does not by itself indicate the absence of genuine issues of material fact. *In re Schreiber*, 163 B.R. 327, 331 (Bankr.N.D.Ill. 1994). The merits of each motion must be evaluated independently of the other. *In re Citron*, 428 B.R. 562 (Bankr.E.D.N.Y. 2010). The court must ensure that the non-moving party gets the benefit of having all inferences drawn in its favor. *In re Crystal Apparel, Inc.*, 220 B.R. 816 (Bankr.S.D.N.Y. 1998). Where a genuine issue of material fact exists, summary judgment is not appropriate for either party. *In re TennOhio Transp. Co.*, 247 B.R. 715 (Bankr.S.D.Ohio 2000).

> Section 548(a) provides, in relevant part, as follows:
>
> (a) (1) The trustee may avoid any transfer . . . of an interest of the debtor in property ... that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
> * * *
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer . . . and
>
> (ii) (I) was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer . . . .

11 U.S.C. § 548(a)(1)(B). Under this provision, the trustee has the burden to prove (1) the debtor had an interest in property; (2) a transfer of that interest occurred within two years of the bankruptcy filing; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the debtor received less than a reasonably equivalent value in exchange for the transfer. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). A trustee seeking to avoid a fraudulent transfer must prove each element by a preponderance of the evidence. *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382 (7th Cir. 1997).

The DEFENDANT does not dispute that the property transferred was that of the DEBTOR; that the transfer was made within two years of the filing of the petition; or that the DEBTOR was insolvent at the time of the transfer. Rather, the only element in dispute is whether the DEBTOR received reasonably equivalent value in exchange for the transfer. The DEFENDANT contends that the DEBTOR'S payment to DEFENDANT constitutes a "contemporaneous exchange" of value.[2] DEFENDANT appears to contend that Dillefeld's order was made on behalf of the DEBTOR, rendering the DEBTOR liable to DEFENDANT, so that its payment discharged its own liability.[3] In support of its motion, the DEFENDANT submits its invoice, dated September 5, 2007, which lists the name of the purchaser as "Central Illinois Energy" and is signed by Toni Dillefeld.[4] The DEFENDANT also submits the affidavit of Ralph L. Plunk, Jr., its vice president, stating that it was his understanding that Toni Dillefeld placed the order on behalf of DEBTOR, not on behalf of CIE or any other entity. Mr. Plunk's belief was based not only on what Ms. Dillefeld said when she placed the order, but by the match of the logos on the shirts and DEBTOR'S check.[5]

The TRUSTEE contends that CIE (not the DEBTOR) contracted to buy the shirts for its employees so that the transfer was not for the benefit of the DEBTOR, but to satisfy an

---

[2] At times, the DEFENDANT characterizes its transaction with the DEBTOR as a "contemporaneous exchange," referencing section 547, which governs the avoidance of preferential transfers. The affirmative defense provided by section 547(c)(1) is inapplicable to a fraudulent transfer avoidance claim. *Pine Top Ins.Co. v. Bank of America Nat. Trust & Sav. Ass'n*, 969 F.2d 321 (7th Cir. 1992), relied upon by the DEFENDANT for its analysis of the "substantially contemporaneous exchange" rule involved a preference avoidance claim not a fraudulent transfer claim.

[3] DEFENDANT argues that it received the consideration (the shirts) for which it bargained and that its payment was contemporaneous with its receipt of the shirts.

[4] The invoice itself is ambiguous as the name "Central Illinois Energy" could refer to the DEBTOR or CIE. Whether the listed address, P.O. Box 111, Canton, is that of the DEBTOR or CIE or both is not part of the record.

[5] Dillefeld's intent would seem to be crucial, but no affidavit or other testimony from her is part of the record.

6

indebtedness of CIE. The TRUSTEE'S claim is founded primarily upon the recording in the DEBTOR'S general ledger that the payment was made in satisfaction of a liability of CIE. As part of his analysis, Gerber reports that the DEBTOR maintained an account to record payments it made to CIE'S creditors and reimbursements which it received from CIE. According to his review, he states that reimbursements were not earmarked for specific payments, and using a first in/first out analysis, he concludes that no reimbursements were received for payments which cleared on and after August 6, 2007. The TRUSTEE also submits the affidavit of Joel Lewis, an employee of CIE, who states that he was asked by his employer to provide his shirt size and within a few weeks, that he, along with other co-workers, were each given five shirts to wear during work hours at CIE. (There is no dispute that the shirts were purchased for and worn by CIE'S employees.)

As a general rule, a fraudulent transfer occurs when a debtor pays the debt of another, when the debtor itself is not obligated on the debt. *In re Integrated Agri, Inc.*, 2005 WL 3088612 (Bankr.C.D.Ill. 2005). By definition, a transfer by the debtor in satisfaction of its own present or antecedent debt constitutes value. 11 U.S.C. § 548(d)(2)(A). So if a valid contract was formed between DEBTOR and DEFENDANT for the purchase of the shirts, then the DEBTOR'S payment to DEFENDANT discharged that liability and could not have been fraudulent, regardless of what DEBTOR did with the shirts thereafter. If, however, the agreement for the purchase of the shirts was between CIE and DEFENDANT, so that DEBTOR paid the obligation of CIE, it is possible the payment is avoidable as a fraudulent transfer. The inquiry would then proceed, though, to ask whether the DEBTOR'S payment of CIE'S debt was gratuitous or not. If gratuitous, the transfer is fraudulent and avoidable.

If, as suggested by Gerber, the DEBTOR'S payment triggered a reimbursement obligation of CIE, as reflected in the DEBTOR'S ledger, then perhaps the DEBTOR received reasonably equivalent value in the form of CIE'S agreement to reimburse it so as to shelter the transfer from avoidance. The DEBTOR'S accounting for the obligation as an intercompany advance raises a question of fact as to how the transaction was treated by both CIE and the DEBTOR. It also raises an accompanying question whether CIE'S agreement to reimburse the DEBTOR, if in fact unperformed, may constitute value received by the DEBTOR.

The threshold question is not who ended up wearing the shirts but whether the DEBTOR was in fact liable to the DEFENDANT for the purchase price of those shirts. The DEFENDANT is correct that if it contracted, paid for and received the shirts, it matters not what it actually did with the shirts thereafter. But the TRUSTEE is also correct that the fact that it was CIE'S employees who received the shirts is circumstantial evidence from which it may reasonably be inferred that Dillefeld placed the order on behalf of CIE and not the DEBTOR. Although the accounting entry as an intercompany advance may cut the other way as it could be inferred that the DEBTOR bought the shirts.[6]

The critical fact is Dillefeld's agency. The existence of an agency and the extent of an agent's authority is a question of fact which should not be decided on summary judgment. *Ioerger v. Halverson Const. Co.*, Inc., 232 Ill.2d 196, 902 N.E.2d 645, 648 (2008). A presumption of an agency may arise from an employer-employee relationship. *Weil, Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 218 Ill.App.3d 383, 577 N.E.2d 1344 (Ill.App. 1st

---

[6] The intercompany advance ledger reflects liabilities owed to the DEBTOR by CIE. Generally, this could mean that the DEBTOR was paying obligations incurred by CIE or it could mean that the DEBTOR was incurring obligations, in its own name, for the benefit of CIE. With respect to the contract to purchase shirts from Camille's, either inference is plausible and equally likely.

8

Dist. 1991). Toni Dillefeld is identified in CIE'S Statement of Affairs as a "corporate employee (secretary; bookkeeper)." The DEBTOR'S Statement of Affairs identifies Antoinette Dillefeld as its bookkeeper. Those documents, at a minimum, permit an inference that she had actual authority to act on behalf of both the DEBTOR and CIE. Ms. Dillefeld's dual capacity and the affidavit of Plunk are sufficient to create a genuine issue of material fact with respect to the question of agency. Because the Court finds that there is a genuine issue of fact as to whether Toni Dillefeld was acting on behalf of the DEBTOR or on behalf of CIE in placing the order for the shirts, both motions for summary judgment must be denied.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###